## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LEIKA DUMOND, *on behalf of herself and all others similarly situated,*

          Plaintiff,

   vs.

MERCEDES-BENZ USA, LLC, a Delaware Limited Liability Company, DAIMLER AG, a foreign corporation,

          Defendants.

Civil No.:  19-cv-14723

**CLASS ACTION COMPLAINT**
**DEMAND FOR JURY TRIAL**

### CLASS ACTION COMPLAINT

Plaintiff Leika Dumond ("Plaintiff"), on behalf of herself and all others similarly situated, by and through counsel brings this action against Defendants Mercedes-Benz USA, LLC and Daimler AG (collectively "Mercedes"). Plaintiff's allegations herein are based upon personal knowledge as to her own acts and experiences in this matter, the investigation of counsel, and upon information and belief as to all other matters.

### IDENTIFICATION OF THE PARTIES
#### (Local Rule 10.1)

1.    The names and addresses of the parties to this action are: (a) Plaintiff Leika Dumond, 258.5 Glenwood Avenue, East Orange, New Jersey 07017; (b) Mercedes-Benz USA, LLC is a Delaware limited-liability corporation whose principal place of business is 303 Perimeter Center North, Suite 202, Atlanta, Georgia 30346; ; and, (c) Daimler AG is a foreign corporation headquartered in Stuttgart, Baden-Wurttemberg, Germany.

### SUMMARY OF CASE

2.    Historically, automobile sunroofs have been modestly sized, spanning just a small portion of the roof over the driver and front passenger seats. Starting in the mid-2000s, sunroofs

expanded in size to cover almost the entire roof. While these sunroofs are aesthetically pleasing, and thus command a premium price, they also pose new and significant engineering challenges. Replacing metal roofs with large plates of glass requires precision in the strengthening, attachment, and stabilization of the glass. As a result of Mercedes' failure to design and manufacture panoramic sunroofs that meet the new engineering challenges, Mercedes' panoramic sunroofs are defective in that they are unable to withstand foreseeable stresses of ordinary use, which ultimately leads to a catastrophic failure usually described as an explosion of the sunroof in both moving and stationary environments ("the Defect").

3.      Some manufacturers, including Hyundai and Volkswagen, have issued voluntary safety recalls because of the panoramic sunroofs' propensity to spontaneously shatter. Yet, Mercedes has refused to issue a recall.

4.      On May 12, 2014, the National Highway and Transportation Safety Administration ("NHTSA") opened an investigation into spontaneous shattering of the panoramic sunroof on the Kia Sorento, model years 2011-2013.[1] Not only does that investigation remain open, but the NHTSA expanded the investigation to include Mercedes along with several other automobile manufacturers offering the panoramic sunroof feature.[2]

5.      On April 14, 2016, Chief Counsel for NHTSA issued a General Order Directed To Motor Vehicle Manufacturers, including Mercedes.[3] The General Order was addressed to, among others, David Tait, General Manager, Engineering Services of Mercedes-Benz US, LLC.[4] The

---

[1] In order to view the status and documents within the investigation, go to https://www.nhtsa.gov/recalls#vehicle, last accessed  July 2, 2019. Then, right under Check Your Vehicle Safety, the site provides the option to "Also search by NHTSA ID." Select that option. Then, enter EA14-002 as the NHTSA Safety Issue ID.

[2] **Exhibit A**: NHTSA General Order dated April 14, 2016 https://static.nhtsa.gov/odi/inv/2014/INLM-EA14002-63477.pdf, last accessed July 2, 2019.

[3] *Id.*

[4] *Id.*

General Order requested, among other things, identification of the total population of Mercedes' vehicles that offer the panoramic sunroof as original equipment and the auto maker's information about all incidents wherein a spontaneous shattering of the panoramic sunroof was reported.[5] The General Order request is comprehensive and responses were due to the NHTSA on May 16, 2016.

6.      While several automobile manufacturers' responses appear on the site available to the public, Mercedes responses, if any were made, are not accessible.[6]

## PARTIES

7.      Plaintiff Leika Dumond is a citizen and resident of East Orange, New Jersey located in Essex County.

8.      Mercedes-Benz USA, LLC ("Mercedes USA") is a Delaware limited-liability corporation whose principal place of business is 303 Perimeter Center North, Suite 202, Atlanta, Georgia 30346.

9.      Mercedes USA through its various entities designs, manufactures, markets, distributes, and sells Mercedes automobiles in New Jersey and New York as well as multiple other locations in the United States and worldwide. Mercedes USA and/or its agents designed, manufactured, and installed the panoramic sunroofs in the Class Vehicles. Mercedes USA also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Class Vehicles.

10.     Defendant Daimler Aktiengesellschaft ("Daimler AG") is a foreign corporation headquartered in Stuttgart, Baden-Wurttemberg, Germany.

---

[5] *Id.*

[6] *See* NHTSA Safety Issue ID EA14-002, 113 Associated Documents, https://www.nhtsa.gov/recalls#vehicle, last accessed July 2, 2019.

11.     Daimler AG is engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including the Class Vehicles, in the United States.

12.     Daimler AG is and was at all relevant times doing business in a continuous manner through a chain of distribution and dealers throughout the United States, including within the District of New Jersey, by selling, advertising, promoting, and distributing Mercedes-Benz motor vehicles.

13.     Daimler AG also developed, reviewed, and approved the marketing and advertising campaigns designed to sell the Class Vehicles.

14.     Through its wholly-owned subsidiaries and/or agents, Daimler AG markets its products in a continuous manner in the United States, including in the State of New Jersey.

15.     Daimler AG is the parent of, controls, and communicates with Mercedes USA concerning virtually all aspects of the Class Vehicles distributed in the United States.

16.     Mercedes USA acts as the sole distributor for Mercedes-Benz vehicles in the United States, purchasing those vehicles from Daimler AG in Germany for sale in this country.

17.     The relationship between Daimler AG and Mercedes USA is governed by a General Distributor Agreement that gives Daimler AG the right to control nearly every aspect of Mercedes USA's operations—including sales, marketing, management policies, information governance policies, pricing, and warranty terms.

18.     Daimler AG owns 100% of the capital share in Mercedes USA.[7]

19.     Daimler AG paid 19 million euros (approximately 21.8 million U.S. dollars) in relocation expenses for Mercedes USA's headquarters.

---

[7] Daimler AG 2015 Annual Report, Notes to the Consolidated Financial Statement, p. 274.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this class action under the Class Action Fairness Act, 23 U.S.C. §1332(d). There are at least one hundred members of the proposed class(es). The aggregated claims of the individual class members exceed the sum value of $5,000,000.00, exclusive of interest and costs. Mercedes and more than two-thirds of the proposed plaintiff class are citizens of different states.

21.     This Court may exercise jurisdiction over Mercedes because it is registered to conduct business in New Jersey, it has sufficient minimum contacts in New Jersey, and it intentionally avails itself of the markets within New Jersey through the promotion, sale, marketing, and distribution of its vehicles thus rendering jurisdiction by this Court proper and necessary.

22.     Subject-matter jurisdiction also arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, et seq.

23.     Venue is proper in this District under 28 U.S.C. § 1391 because Mercedes transacts business in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

### The Mercedes Panoramic Sunroof Defect

24.     Mercedes manufactures, markets, and distributes automobiles in the United States under the Mercedes and Mercedes-Benz brand names.

25.     The Mercedes automobile models with factory-installed panoramic sunroofs that are the subject of this case (collectively "Class Vehicles") include:

- 2003-present C-Class;
- 2007-present CL-Class;
- 2013-present CLA-Class;
- 2003-present E-Class;

- 2008-present G-Class;
- 2007-present GL-Class;
- 2012-present GLK
- 2012-present GLC-Class;
- 2012-present ML-Class;
- 2010-present M-Class;
- 2015 Mercedes Maybach S-600;
- 2007-present R-Class;
- 2013-present S-Class;
- 2013-present SL-Class; and
- 2013-present SLK-Class.

26.     Plaintiff anticipates amending the Class Vehicles definition upon Mercedes identifying, in discovery and/or the NHTSA investigation, all of its U.S. vehicles manufactured and sold with the factory-installed panoramic sunroof feature.

27.     Starting in the 2000s, Mercedes manufactured and sold through its authorized dealerships vehicles with an optional upgrade of a factory-installed panoramic sunroof. The panoramic sunroof designs in all of the Class Vehicles are substantially similar in design and manufacture.

28.     Mercedes generally markets the panoramic sunroofs as a luxury upgrade, available even on what it considers to be its lower-end cars (costing less than $50,000.00) like the CLA-Class, C-Class, and C-Class Coupe.[8] The cost to upgrade the sunroof, depending upon the vehicle, ranges from over one thousand to several thousand dollars. The actual material cost of the panoramic sunroofs is relatively low, making the option one of the most profitable features in the automotive industry.

29.     Panoramic sunroofs are made of tempered or laminated glass that attaches to tracks, which in turn are set within a frame attached to the vehicle. Most panoramic sunroofs, including

---

[8] Lott, Austin, "Vehicles Offering Panoramic Sunroofs for Less Than $50,000."*MotorTrend* April 21, 2015 http://www.motortrend.com/news/vehicles-offering-panoramic-sunroofs-for-less-than-50000/, last accessed July 2, 2019.

those offered by Mercedes, include a retractable sunshade.

     30.    Photographic examples of the Mercedes' panoramic sunroof feature include:

**2013 Mercedes-Benz GL-350 Panoramic Sunroof** [9]



---

[9]    http://benzblogger.s3.amazonaws.com/wp-content/uploads/2012/07/24135756/2013-GL-Class-Panoramic-Roof.jpg, last accessed July 2, 2019.

**2014 Mercedes-Benz CLA 250 Sunroof**[10]



**2016 Mercedes-Maybach S600 Panoramic Sunroof**[11]



31.     Panoramic sunroofs present manufacturing, design, and safety challenges for

---

[10] https://www.caricos.com/cars/m/mercedes-benz/2014_mercedes-benz_cla-class_us/images/45.html, last accessed July 2, 2019.

[11]     http://www.caricos.com/cars/m/mercedes-benz/2016_mercedes-maybach_s-class/1600x1200/30.html,     last accessed July 2, 2019.

manufacturers because the large plates of glass take up much of the surface area of the vehicle's roof.

32.     One particular challenge is the material make-up of the glass. Whereas some manufacturers, such as Volvo and Honda, have used a *laminated* glass, other manufacturers, such as Mercedes, Ford, Nissan, Kia, Hyundai, and Volkswagen, have opted to install panoramic sunroofs with *tempered* glass that feature large areas of ceramic paint.

33.     In the automotive industry, generally tempered or toughened glass is made in the same manner: a piece of annealed glass is shaped and cut as to original equipment manufacturing ("OEM") standards. The glass is heated and then rapidly cooled, *i.e.*, tempered. The tempering process creates an outer layer of glass that is compressed (similar to being shrink-wrapped) around a middle core of the glass that is constantly pressing outwards creating tension or tensile force. The compressive and tensile layers create a stronger piece of glass as compared to non-tempered glazing. However, if the compressive layer is compromised the entire piece of glass fails catastrophically and often explosively.

34.     The defects in design and manufacture of the panoramic sunroofs are compounded by Mercedes' use of thinner glass. Car makers use thinner glass to save weight and improve vehicle fuel efficiency. Thinner glass, however, is very difficult to temper properly (especially when thicknesses are 4 mm or less) as the compressive layers are thinner, increasing the probability of catastrophic failure.

35.     Additionally, the tempered glass used in the Class Vehicles features a ceramic paint applied prior to tempering. Automotive ceramic paint or ceramic enamels are composed of fine powders of low melting point glass frit, pigments, and other additive oxides, sulfides, or metals. After application of the ceramic enamel, the glass is then tempered, as described above. These

ceramic enamels are applied on the top around the edges of panoramic sunroof glazing and serve aesthetic and functional purposes. The ceramic paint area appears as a "black band" along the edge of the glass.

36.     Ceramic enamels are known "adulterants" and significantly weaken the structural strength and integrity of the Class Vehicles' tempered panoramic sunroof glazing. Among other factors, ceramic enamels compromise glass strength because: (1) the enamels have different thermal expansion coefficients than the glass substrates (the glass and the paint expand at different rates), resulting in residual stress between the ceramic enamel and the glass substrate; and (2) the glass frit will ion exchange with the glass substrate lessening or eliminating the compressive layer above the tensile region thereby significantly weakening it.

37.     The ceramic paint area is relatively small in conventional sunroofs, but ceramic paint areas have become larger with the advent of panoramic sunroofs resulting in the glass becoming progressively weaker, more likely to spontaneously burst and, for the unsuspecting driver and passengers, more dangerous.

38.     Yet another challenge presented by the employment of panoramic sunroofs is fastening. The sunroof glass needs to be fastened to the vehicle with a sufficient degree of tightness. Mercedes and other manufacturers fasten the sunroof in a manner that reduces road and wind noise, and makes them less susceptible to rainwater incursion. At the same time though, flexing and vibration caused by ordinary driving imposes stress on the sunroof, ultimately causing the glass to shatter. In the Mercedes models at issue, the compromised tempered glass cannot withstand the pressures and flexing that the sunroof frame and vehicle demand. This can be true even when the vehicle is brand new or is parked and sitting still.

39.     Given their size, thinness, curvature, ceramic paint coating, and manner of

attachment to the vehicle's frame, panoramic sunroofs in Class Vehicles are weakened and not capable of withstanding the stresses reasonably anticipated and encountered in ordinary usage, making them defective because they are substantially likely to shatter and are not reasonably fit for their intended use and environment. In other words, panoramic sunroofs in Class Vehicles are unnecessarily prone to experience an explosive failure in connection with environmental forces reasonably anticipated in ordinary use. This propensity to shatter makes Class Vehicles unreasonably dangerous and unfit for their intended use of providing a safe means of transportation.

40.    In 2013, the Korea Automobile Testing & Research Institute ("KATRI") concluded that the enamel used for ceramic paint areas in panoramic sunroofs like those installed in Mercedes vehicles impairs the strength of the glass, making it not only less durable than the usual toughened glass, but also less durable than ordinary glass.

41.    Following KATRI's report, an Informal Working Group on Panoramic Sunroof Glazing was established by the United Nations Economic Commission for Europe to evaluate the safety of panoramic sunroofs. The Working Group is chaired by a representative from KATRI and is considering whether to amend the UN regulations on safety glazing. At the end of June 2016, the Working Group confirmed that conventional automotive glass enamels weaken the mechanical strength of panoramic sunroof glazing.

### Consumer Complaints Reveal the Magnitude of the Defect

42.    At least forty-three Mercedes-Benz owners reported an incident of their sunroof spontaneously shattering to the NHTSA. Reporting began as early as 2008. A summary of these consumer complaints appear below:

| DATE OF NHTSA COMPLAINT | DATE OF INCIDENT | MODEL YEAR | NISSAN MODEL | NHTSA ID NUMBER | NHTSA CONSUMER COMPLAINT EXCERPT |
|---|---|---|---|---|---|

| 1. | 6/12/2018 | 6/11/2018 | 2014 | C250 | 11101470 | "I WAS DRIVING ON THE FREEWAY AT AROUND 9AM CST HEADED TO DFW AIRPORT WHEN ALL OF A SUDDEN I JUST HEARD A LOUD BANG. I IMMEDIATELY FELT PRESSURE IN MY EARS AND IT NOW FELT LIKE THERE WAS A WINDOW OPEN. HAVING PULLED OUT TO A SAFE SPOT ON THE SIDE OF THE FREEWAY TO INSPECT THE VEHICLE, I WAS SHOCKED TO SEE THE SUNROOF GLASS IS WHAT HAD EXPLODED." |
|---|---|---|---|---|---|---|
| 2. | 5/28/2018 | 5/25/2018 | 2013 | C250 | 11098292 | "SUNROOF EXPLODES AND SHATTERS FOR NO APPARENT REASON WHILE DRIVING STRAIGHT ON THE HIGHWAY." |
| 3. | 5/2/2018 | 5/2/2018 | 2016 | GL450 | 11091309 | "THE SUNROOF IN THIS VEHICLE SHATTERED OVERNIGHT WITHOUT ANY KNOWN CAUSE…. WE TOOK THE VEHICLE TO THE MERCEDES BENZ DEALERSHIP AND THE REPRESENTATIVE THERE SAID HE HAD NEVER HEARD OF THIS HAPPENING; HOWEVER, THERE ARE MANY INCIDENTS REPORTED ON THE INTERNET OF THIS EXACT SAME ISSUE. I HOPE YOU CAN FORCE THEM TO LOOK INTO THIS ISSUE FOR SAFETY REASONS AND ALSO FOR THE MONETARY EXPENSE TO THE CONSUMER. IT SHOULD BE A WARRANTY REPAIR ITEM." |
| 4. | 4/30//2018 | 4/28/2018 | 2014 | ML350 | 11091112 | "SUNROOF EXPLODING - WAS DRIVING ON THE FREEWAY AT AROUND 70MPH WHEN I HEARD A LOUD BANG. I COULD TELL IT CAME FROM ABOVE AND COULD TELL THE SUNROOF HAD SHATTERED….IT HAPPENED SUDDENLY WITHOUT ANY WARNING….THERE WAS NO IMPACT FROM ANYTHING." |
| 5. | 3/27/2018 | 3/26/2018 | 2009 | R350 | 11081564 | "WHILE DRIVING AT 60 MPH, THE CONTACT HEARD SOMETHING LIKE A LOUD POPPING SOUND. AT THAT POINT, THE CONTACT REALIZED THAT THE SUNROOF HAD EXPLODED WITHOUT IMPACT. THE CONTACT STATED THAT THE VEHICLE WAS TAKEN |

|  |  |  |  |  |  | TO AN INDEPENDENT MECHANIC WHERE THE TECHNICIAN INFORMED THE CONTACT THE FAILURE HAD NEVER BEEN SEEN BEFORE. THE DEALER WAS NOT CONTACTED AND MADE AWARE OF THIS FAILURE…." |
|---|---|---|---|---|---|---|
| 6. | 2/6/2018 | 2/5/2018 | 2017 | GLC300 | 11067206 | "EXPLODING PANORAMIC SUNROOF: WHILE DRIVING ABOUT 40MPH ON ROUTE 35SOUTH (MIDDLETOWN, NJ) IN 30 DEGREE WEATHER AT 7:30PM ON 5FEB2018 THE FORWARD PANEL OF THE PANORAMIC SUNROOF EXPLODED. THERE WERE NO OTHER CARS AROUND ME. IT WAS A LOUD POP EXPLOSION. THE SAFETY GLASS LOOKS PUSHED OUT AND GLASS STARTED TO FLY BEHIND THE CAR ONTO THE ROAD." |
| 7. | 2/2/2018 | 1/21/2018 | 2013 | GLK250 | 11066702 | "DRIVING 45-50 MPH ON THE ROAD ALONE AND AM STARTLED BY LOUD NOISE WHICH RESEMBLED A GUNSHOT…I LOOKED UP AND NOTICED MY PANORAMIC SUNROOF WHAT SHATTERED IN TINY PIECES. DEALERSHIP STATED THAT 'NO OUTSIDE SOURCE FOUND CAUSING DAMAGE' TO THE SUNROOF. CAR IS UNDER AND EXTENDED WARRANTY AND MANUFACTURE HAS REFUSED TO TAKE RESPONSIBILITY FOR THE ISSUE." |
| 8. | 1/27/2018 | 1/26/2018 | 2010 | E350 | 11065391 | "I WAS DRIVING…AT HIGHWAY SPEEDS, WHEN OUT OF NOWHERE THE SUNROOF JUST SHATTERS INTO PIECES. THERE WAS NO LARGE OBJECT THAT CAME TOWARDS ME…. I…CALLED THE TOLL ROAD AUTHORITY. THEY SUMMONED AN OFFICER TO HELP ME. THE OFFICER SEARCHED THE AREA OF THE FREEWAY FOR ANY OBJECT THAT COULD HAVE CAUSED THIS, AND FOUND NOTHING. AT CLOSER INSPECTION HE AND I NOTICED THAT GLASS BOWED OUTWARD AND NO MAJOR BODY DAMAGE BEHIND THE SUNROOF |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | INDICATED THAT NO OBJECT CAUSED THIS. I THEN WENT TO THE DEALERSHIP AND TOLD THEM ABOUT THIS SPONTANEOUS SHATTERING ONLY TO BE TOLD THAT IT'S IMPOSSIBLE FOR SOMETHING LIKE THIS TO HAPPEN ON ITS OWN. I WAS TOLD PERHAPS IT'S A 'PEBBLE'…. I AM CONVINCED THAT THIS SHATTERED…IN FACT EXPLODED (THAT'S HOW IT SOUNDED) BY ITSELF AND WAS A DEFECTIVE GLASS….." |
| 9. | 1/13/2018 | 11/15/2017 | 2007 | R320 | 11062610 | "PANORAMA SUNROOF EXPLODED WHILE PARKED IN OUR GARAGE." |
| 10. | 1/12/2018 | 12/18/2017 | 2016 | GLE400 | 11062371 | "WHILE DRIVING…AT HIGHWAY SPEEDS THE PANORAMIC SUNROOF SPONTANEOUSLY SHATTERED COVERING MY WIFE WITH GLASS AND ALMOST CAUSING HER TO LOSE CONTROL." |
| 11. | 12/31/2017 | 12/16/2017 | 2012 | GLK350 | 11057781 | "I WAS DRIVING…WHEN I HEARD A LOUD POP….THE WHOLE FRONT PANEL SUNROOF NOW LOOKED LIKE CRACKLE GLASS. WHEN I GOT HOME I LOOKED TO SEE IF SOMETHING HAD HIT THE SUNROOF BUT NOTHING HAD. WHEN I CONTACTED MY MERECEDES DEALERSHIP THEY WOULD NOT ACKNOWLEDGE THERE WAS A PROBLEM EVEN THOUGH I HAD TOLD THEM WHAT THE MERCEDES BLOGS WERE SAYING. I HAD THE DEALERSHIP REPLACE THE SUNROOF THE PANEL COST $1131.20 PLUS LABOR $402.50." |
| 12. | 12/28/2017 | 12/20/2017 | 2016 | GLE450 | 11057226 | "MY SUNROOF EXPLODED SPONTANEOUSLY WHILE I WAS DRIVING. THERE WAS NO SIGNS OF DAMAGE TO THE GLASS. THE GLASS FLEW BACK ON ROAD AND THE GLASS REMAINING ON TOO APPEARED BOWED." |
| 13. | 12/27/2017 | 8/2/2017 | 2016 | GLC300 | 11056986 | "PANORAMIC SUNROOF SHATTERED AND EXPLODED WITHOUT WARNING, WITHOUT |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | ANY EXTERNAL IMPACT SEEN, FELT OR HEARD. VEHICLE WAS MOVING ON RURAL HIGHWAY (FLAT FARMLAND) AROUND 55-60 MPH. EXTERNAL TEMPERATURE ABOVE 100 DEGREES. HIGHWAY TRAFFIC NORMAL, NOT DENSE OR EMPTY. ODOMETER AT 12,000 MILES. HAZARD DUE TO DEFECTIVE/ INSUFFICIENTLY STRONG SUNROOF GLASS." |
| 14. | 11/21/2017 | 11/10/2017 | 2016 | C300 | 11047852 | "I WAS DRIVING DOWN THE FREEWAY AT APPROXIMATELY 65 MPH AND THE PANORAMIC SUNROOF…EXPLODED. I SAY 'EXPLODED' BECAUSE NOTHING STRUCK THE GLASS AND MOST OF THE GLASS BLEW OUT AND OFF THE CAR, NOT IN….YOU CAN EVEN SEE WHERE THE GLASS REMAINING IS STICKING UP, NOT DOWN. THE SHADE WAS OPEN SO GLASS DID FALL INTO MY CAR, CUTTING MY ARM. IF KIDS OR OTHERS WERE IN THE CAR, IT WOULD LIKELY HAVE CUT THEM OR COULD HAVE RESULTED IN GLASS DUST IN THEIR EYES, ETC. IT ALSO COULD HAVE CAUSED AN ACCIDENT BY SCARING ME BUT ALSO SINCE MUCH OF IT BLEW OFF MY CAR, IT PUT THE CARS BEHIND ME IN DANGER AND COULD HAVE CAUSED THEM TO CRASH. MERCEDES HAS NOT TAKEN RESPONSIBILITY OF THIS YET, BUT I HAVE BROUGHT THIS TO THEIR ATTENTION. THE VEHICLE WAS ONLY A LITTLE OVER 1 YEAR OLD AND ONLY ABOUT 17,000 MILES ON IT. NO WAY SHOULD THIS HAVE HAPPENED…." |
| 15. | 11/5/2017 | 11/5/2017 | 2007 | R320 | 11043585 | "SUNROOF EXPLODED WHILE PARKED IN GARAGE." |
| 16. | 11/5/2017 | 10/17/2017 | 2017 | GLC300 | 11043584 | "WHILE DRIVING…THE SUNROOF EXPLODED…MY CONCERN IS HOW THE SUNROOF SHATTERED AND THE QUALITY OF THE MATERIAL/GLASS USED. WHAT TYPE OF GLASS IS USED IN THIS VEHICLE FOR IT TO SHATTER AS IT DID? IS THIS PERHAPS A SIGN |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | OF CHEAPER MATERIAL BEING USED ON THE SUNROOF…." |
| 17. | 10/28/2017 | 10/9/2017 | 2017 | E300 | 11040697 | "PANORAMIC SUNROOF SPONTANEOUSLY EXPLODED WHILE DRIVING ON FREEWAY." |
| 18. | 10/16/2017 | 10/14/2017 | 2017 | GLC300 | 11033826 | "WHILE DRIVING…WE HEARD A LOUD BAM, A MOMENT LATER HEARD CRACKING THEN SHATTERED GLASS FROM MY SUNROOF FELL INTO THE CAR…." |
| 19. | 8/31/2017 | 8/29/2017 | 2013 | C300 | 11020997 | "…LESS THAN A HALF A MILE FROM ENTERING THE HIGHWAY MY SUNROOF EXPLODED. THERE WERE NO CARS NEAR ME AND NO DEBRIS NEAR MY CAR. I CONTACTED MERCEDES BENZ AND THEY SEEM VERY UNCONCERNED. WHEN THIS OCCURRED GLASS WENT EVERYWHERE, ALL OVER ME AND BOTH THE FRONT AND BACK SETS. I WAS DRIVING AT A SPEED OF 60 MILES AND HOUR. AFTER GAINING CONTROL OF THE CAR I GOT OUT AND CALLED THE POLICE AND MY INSURANCE COMPANY. THIS WAS A TERRIFYING EXPERIENCE." |
| 20. | 7/11/2017 | 6/27/2017 | 2015 | GLA250 | 11004296 | "I WAS DRIVING AT 45MPH DURING DAY TIME, IN NORMAL SLOW-TRAFFIC CONDITIONS…, WHEN MY PANORAMIC SUNROOF EXPLODED. OUTSIDE TEMPERATURE WAS 66F, I WAS NOT DRIVING UNDER A BRIDGE AND I DIDN'T HEAR ANY NOISE OF IMPACT GENERATED BY A FOREIGN OBJECT. AT THE TIME OF THE EXPLOSION I WAS PASSING A TRUCK AND BY THE SOUND OF IT, I IMMEDIATELY THOUGHT THAT ONE OF THE TRUCK'S TIRES EXPLODED. INSTEAD I LOOKED UP AND MY ENTIRE PANORAMIC SUNROOF WAS IN PIECES. LUCKILY THE SUNSHADE LINING WAS CLOSED AND IT PROTECTED MY FACE FROM BEING EXPOSED TO THE PIECES OF BROKEN GLASS." |
| 21. | 4/3/2017 | 4/3/2017 | 2015 | C300 | 10970347 | "MY SUNROOF EXPLODED/SHATTERED WHILE I WAS DRIVING TODAY, |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | TRAVELING AT A SPEED OF 45MPH ON CITY ROAD AFTER TURNING A CORNER. OUTSIDE TEMP WAS AROUND 85 AND INSIDE CAR WAS 75. CAR HAS AROUND 6800 MILES, AND THERE WAS NOTHING THAT HIT THE SUNROOF. SCARY SITUATION FOR THE DRIVER! CAR IS CURRENTLY UNDER WARRANTY AND AT THE DEALER FOR REPAIR, BUT THEY WANT MY INSURANCE TO PAY. I INSIST THIS BE INVESTIGATED BECAUSE I BELIEVE IT TO BE A MANUFACTURE DEFECT" |
| 22. | 2/13/2017 | 2/10/2017 | 2016 | GLA250 | 10954279 | "DRIVING 70 MPH ON HIGHWAY, 12K MILES ON MY 2016 CAR AND THE SUNROOF EXPLODED OUT THE TOP OF MY CAR. SOUNDED LIKE A SHOTGUN BLAST, SHREDS OF GLASS EVERYWHERE. NO WARNINGS, SOUNDS, ANY IDEA ABOUT TO OCCUR." |
| 23. | 2/3/2017 | 2/3/2017 | 2009 | GL450 | 10949492 | "I WAS DRIVING ON MY WAY HOME FROM WORK TODAY…MERGING ONTO HIGHWAY WHEN I HEARD A LOUD EXPLOSION. I THEN SAW THAT MY SUNROOF HAD SHATTERED AND WAS BOWED OUT. THERE IS A LARGE HOLE IN THE CENTER OF THE SUNROOF AND THE REST OF THE GLASS IS SPIDERWEBBED. NOTHING HAD HIT MY CAR OR MY SUNROOF. I WAS ONLY GOING ABOUT 15 MPH…. IT WAS VERY SCARY AND DANGEROUS. I CALLED MERCEDES WHO IS NO HELP. THEY NEED TO RECALL THIS OR BE HELD RESPONSIBLE. THIS COULD HAVE CAUSED ME TO CRASH OR IF MY SUNROOF COVER WAS OPENED I WOULD HAVE BEEN SHOWERED IN GLASS." |
| 24. | 1/30/2017 | 1/30/2017 | 2014 | GL450 | 10948508 | "WHILE DRIVING ON THE FREEWAY AT ABOUT 70 MPH THE SUNROOF EXPLODED. WE WERE NOT BEHIND ANOTHER CAR AND DRIVING IN THE MIDDLE OF AN UNPOPULATED AREA ALONG THE !-10 FREEWAY. *TR" |

| 25. | 1/1/2017 | 12/31/2016 | 2017 | E300 | 10938962 | "THE SUNROOF…JUST SPONTANEOUSLY SHATTERED WHILE DRIVING. I WAS DRIVING STRAIGHT AHEAD AROUND 50 MPH ON A HIGHWAY ON A RAINY DAY, WITH NO ONE IMMEDIATELY IN FRONT OF ME WHEN I HEAR A LOUD NOISE THAT STARTLED ME. I DIDN'T KNOW WHAT HAD HAPPENED UNTIL I HEARD WIND NOISE FROM OUTSIDE AND REALIZED THE SUNROOF HAD SHATTERED. ONCE I WAS ABLE TO SAFELY PULL OVER, I REALIZED THAT THE THERE WAS A HUGE HOLE IN MY SUNROOF AND IT SEEMED TO HAVE ORIGINATE FROM INSIDE, AS THE GLASS WAS PUSHED OUTWARD. WITH NO CARS IN FRONT OF ME, DRIVING ON A STRETCH OF HIGHWAY WITH NO OVERPASS, I SUSPECT THAT THE GLASS OR CAR HAD A DEFECT AND SHATTERED ON ITS OWN. IT WAS A SCARY INCIDENT THAT COULD HAVE BEEN MUCH WORSE. FORTUNATELY, NO ONE WAS INJURED. THE CAUSE FOR THE INCIDENT IS UNKNOWN SINCE THERE WERE NO ROCKS OR OTHER FOREIGN OBJECT THAT WAS NEAR THAT COULD HAVE SPECIFICALLY HIT THE SUNROOF WITH DOING NO OTHER DAMAGE TO THE VEHICLE. *TR" |
| --- | --- | --- | --- | --- | --- | --- |
| 26. | 12/11/2016 | 12/09/2016 | 2017 | C300 | 10934527 | "SUNROOF EXPLOSION TOOK PLACE IN TRANSIT TO DELIVERY TO MY HOME…. IT WAS STATIONARY INSIDE OF ENCLOSED TRANSIT VEHICLE." |
| 27. | 10/27/2016 | 10/26/2016 | 2013 | C300 | 10919684 | "DRIVING HOME…. VERY LOUD NOISE LIKE A SMALL EXPLOSION. THE FRONT PART OF THE PANORAMIC SUNROOF EXPLODED! THERE WERE NO OVER PASSES OR CARS NEARBY. NO OTHER APPARENT DAMAGE ANYWHERE. OUTSIDE/EXTERIOR SUNROOF LOOKED FINE (SEE PHOTOS). IT WAS RAINING AT THE TIME. THE SUNROOF, ALTHOUGH SHATTERED, DID REMAIN INTACT, HOWEVER STARTED |

| | | | | | LEAKING. THIS APPEARS TO BE A VERY COMMON PROBLEM (DO ANY TYPE OF INTERNET SEARCH ON PANORAMIC SUNROOF EXPLODING). PLEASE INVESTIGATE. *TR" |
|---|---|---|---|---|---|---|
| 28. | 10/7/2016 | 6/15/2016 | 2015 | C300 | 10914426 | "…. WHILE DRIVING AT 55 MPH, THE GLASS IN THE SUNROOF COLLAPSED WITHOUT IMPACT. THE VEHICLE WAS TAKEN TO THE DEALER WHERE THE SUNROOF WAS REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 21,000." |
| 29. | 9/27/2016 | 9/27/2016 | 2015 | ML350 | 10910097 | "SUNROOF WAS FOUND SHATTERED AFTER THE VEHICLE WAS PARKED ON A RESIDENTIAL STREET. NO EVIDENCE OF VANDALISM. FOUND OUT AFTER OPENING THE DOOR & CLOSING IT - HEARD THE SHATTERED GLASS FALL ONTO THE INTERIOR SUNROOF VISOR. NO VISIBLE DAMAGE THAT MIGHT INDICATE THE CAUSE OF THE SHATTERED GLASS. THE FOUR CORNERS OF THE SUNROOF WERE SUNKEN IN SLIGHTLY, AND THE MIDDLE PORTION FLEXED UPWARD. THERE HAS BEEN NO RECENT EXTREME HEAT RECENTLY." |
| 30. | 7/27/2016 | 7/27/2016 | 2008 | C300 | 10889144 | "I WAS DRIVING ON A STRAIGHT HIGHWAY AT APPROXIMATELY 70MPH WHEN, ALL OF A SUDDEN, I HEARD A LOUD EXPLOSION. A FEW SECONDS LATER, I FELT THE CAR PULLING SLIGHTLY TO THE RIGHT. A FEW GLASS FRAGMENTS THEN STARTED TO COME THROUGH THE SUNROOF COVER AND THIS IS WHEN I SURMISED THAT THE SUNROOF HAD SHATTERED UNEXPECTEDLY…. WHEN I GOT HOME, I NOTICED THAT THE SUNROOF HAD EXPLODED OUTWARDLY. I CAN EASILY IMAGINE SOMEONE SWERVING DUE TO THE SHOCKED OF THE LOUD EXPLOSION AND CAUSING AN ACCIDENT." |

| 31. | 7/27/2016 | 6/6/2016 | 2014 | GLK250 | 10889085 | "'SPONTANEOUS SUNROOF EXPLOSION'…EXPERIENCED A SPONTANEOUS SUNROOF EXPLOSION WHILE DRIVING ON THE HIGHWAY AT HIGHWAY SPEEDS. AN ACCIDENT NEARLY OCCURRED AS A RESULT OF THE GUNSHOT LIKE IMPACT EXPERIENCED INSIDE THE CABIN OF THE VEHICLE AS A RESULT OF THE SUNROOF EXPLOSION. I HAD SEVERAL CHARDS OF GLASS EMBED IN MY SKIN AND IN MY EYE, AS THE EXPLOSION PRODUCED AN ULTRA FINE DUST OF SAFETY GLASS PARTICLES THAT WERE UNAVOIDABLE. NO IMPACT DEBRIS OR FOREIGN OBJECT WAS ATTRIBUTABLE TO THE CAUSE OF THE EXPLOSION, HINTING AT MANUFACTURER DEFECT." |
|---|---|---|---|---|---|---|
| 32. | 7/20/2016 | 7/20/2016 | 2014 | C250 | 10886109 | "I WAS EXITING THE INTERSTATE AND…I HEAR A LOUD POP AND SEE THAT MY SUNROOF HAS SHATTERED. IT REMAINED INTACT AND DID NOT SHOWER ME WITH GLASS BUT IT IS CRACKED AND BOWED IT ON ALL CORNERS AND IS BOWED UP IN THE CENTER OF THE GLASS." |
| 33. | 06/14/2016 | 06/10/2016 | 2016 | GLC300 | 10874285 | "AT 7:30 AM ON…, WHILE DRIVING…IN OUR 5-MONTH-OLD MB - GLC 300, THE PANORAMIC SUNROOF SUDDENLY AND WITHOUT ANY WARNING EXPLODED AND SHATTERED OUTWARD. THE SOUND WAS AS LOUD AS A BOMB. AS SHOWN IN THE PHOTOGRAPHS, NEARLY ALL THE SUNROOF WAS BLOWN OUT, WITH ONLY A LITTLE GLASS REMAINING AROUND THE FRAME. THE SHATTERED GLASS FRAGMENTS EITHER FLEW OFF OR SETTLED ON TOP OF THE SHADE SCREEN. WE WERE DRIVING AT APPROXIMATELY 65 MPH AND THERE WERE NO CARS DIRECTLY IN FRONT OF US OR BEHIND. WE HAD THE AIR CONDITIONING SYSTEM ON WITH THE OUTSIDE TEMPERATURE AT ABOUT 70F. IT WAS A CLEAR MORNING AND THE SUN HAD |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | JUST RISEN. OUR MB DEALER…SAID THEY WERE NOT AWARE OF OTHER INSTANCES OF EXPLODING GLASS SUNROOF S" |
| 34. | 04/11/2016 | 04/9/2016 | 2008 | C300 | 10854808 | "MY MERCEDES…WAS PARKED IN OUR DRIVEWAY. I WALKED OUTSIDE AND WAS SHOCKED TO SEE THAT THE SUNROOF GLASS HAD INEXPLICABLY EXPLODED OUTWARD. PLEASE SEE THE ATTACHED PHOTOS. OUR SLIDING SUNROOF SHADE WAS OPEN. WE FOUND GLASS ALL OVER THE ROOF OF THE CAR, IN THE CAR AND ON THE GROUND…. WE ALSO FEEL VERY FORTUNATE THAT WE WERE NOT DRIVING THE CAR, FOR THIS DEFECT AND RESULTING EXPLOSION COULD HAVE CAUSED INJURY AND A TERRIBLE ACCIDENT." |
| 35. | 01/23/2016 | 01/23/2016 | 2013 | GLK350 | 10821887 | "PANORAMIC SUNROOF EXPLOSION. DRIVING ON A CITY STREET AT 45 MPH WHEN SUDDENLY THE CLOSED SUNROOF SHATTERED. NO FOREIGN OBJECTS OR CONTACT OCCURRED. IT WAS SPONTANEOUS EXPLOSION." |
| 36. | 10/06/2015 | 06/29/2015 | 2015 | C400 | 10780092 | "THE PANORAMIC SUNROOF IN MY CAR EXPLODED…. THE CAR WAS PURCHASED NEW FROM MERCEDES BENZ…. THE CAR HAD 146 MILES ON THE ODOMETER. …I WAS TRAVELING…AT APPROXIMATELY 65MPH. THERE WERE NO OTHER VEHICLES IN CLOSE PROXIMITY,…. THE ROAD WAS RELATIVELY SMOOTH AND THE WEATHER WAS DRY. NO PROJECTILE HIT THE GLASS PRIOR TO IT EXPLODING. WHEN THE SUNROOF EXPLODED, ALL I HEARD WAS A LARGE BANG AND THEN GLASS FALLING INTO THE CAR AND ALSO 'EXITING' THE CAR. THE GLASS DEBRIS LEFT SIGNIFICANT PITTING ON THE TRUNK OF THE CAR. I ESTIMATE 25% OF THE GLASS CAME INTO THE CAR. I SWERVED INTO TO THE EMERGENCY LANE AND |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | STOPPED IN THE EMERGENCY LANE." |
| 37. | 09/11/2015 | 09/01/2015 | 2015 | GLK350 | 10763088 | "MY WIFE WAS DRIVING ON THE INTERSTATE AT ~65MPH IN HER NEW 2015 GLK350 W/ PANORAMIC & 4MATIC & ~7000 MILES. IT WAS 7:00PM IN VERY LIGHT TRAFFIC. NO ONE WAS NEAR HER AT THE TIME OF INCIDENT. SHE HEARD A VERY LOUD STARLING BANG. AT FIRST SHE THOUGHT A TIRE HAD BLOWN. SHE THEN HEARD FAINT CRACKLING NOISE ABOVE HER HEAD. THE SUN SHADE WAS CLOSED SO NO GLASS DROPPED INTO THE CABIN AREA. WITHIN MINUTES SHE NOTICED THAT THE SUNROOF HAD SHATTERED. NOTEWORTHY POINT, THE SUNROOF GLASS WAS BROKEN CONVEX. SO, IT WAS SLIGHTLY POUCHED UPWARD, WHICH WE THOUGHT WAS UNUSUAL. I TAPED THE SUNROOF AND BROUGHT IT TO THE LOCAL DEALER THE NEXT DAY. THE DEALER SAID SHE HIT SOMETHING AND THAT'S WHAT CAUSED THE ISSUE. I MENTIONED THAT THEIR WAS NO ONE ELSE AROUND AND THEIR WERE LOTS OF INTERNET REPORTS WITH SIMILAR PROBLEMS. HE SAID YOU CAN FIND ANYTHING ON THE INTERNET. MY COST TO REPLACE SUNROOF WAS $2500 USING MY INSURANCE, OR $1500 WITH A DISCOUNT IF I WAS PAYING FOR IT MYSELF…. AFTER RESEARCHING…, I FOUND APPROX. 9 CASES OF LATE MODEL MERCEDES WITH A VERY SIMILAR ISSUES. THERE'S ALSO NUMEROUS ARTICLES AND NEWS STORIES INCLUDING OTHER CAR MANUFACTURERS ON THE NET WITH THE SAME SUNROOF ISSUES. THERE IS A SAFETY ISSUE HERE." |
| 38. | 05/06/2015 | 04/23/2015 | 2015 | S550 | 10715024 | "DRIVING ON THE FREEWAY AND HEARD A LOUD SOUND. THE GLASS ON THE SUNROOF EXPLODED AND BROKE OFF IN CHUNKS HITTING DRIVER |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | REPEATEDLY UNTIL APPROXIMATELY 80% OF THE GLASS COLLAPSED. GLASS SHARDS CUT DRIVER. MBWORLD SHOWS SIMILAR INCIDENTS TO OTHER MERCEDES-BENZ VEHICLES. MERCEDES-BENZ…WOULD NOT COVER UNDER WARRANTY OR ADMIT DEFECT. SEE SAMPLE OF POSTINGS: HTTP://MBWORLD.ORG/FORUMS/E-CLASS-W212/405329-2011-E350-EXPLODING-SUNROOF.HTML HTTP://MBWORLD.ORG/FORUMS/C-CLASS-W204/544374-EXPLODING-SHATTERED-SUNROOF-TRISTAR-MERCEDES-ST-LOUIS-MO.HTML HTTP://MBWORLD.ORG/FORUMS/C-CLASS-W203/346317-C230-SUNROOF-EXPLODED.HTML HTTP://MBWORLD.ORG/FORUMS/C-CLASS-W203/525268-SUNROOF-BLEW-OUT-EXPLODED.HTML HTTP://MBWORLD.ORG/FORUMS/GL-CLASS-X166/550965-PANORAMIC-ROOF-BLEW-UP.HTML. *TR" |
| 39. | 03/08/2015 | 02/22/2015 | 2011 | GLK350 | 10692832 | "I WAS DRIVING ON THE INTERSTATE, AND I HEARD A VERY LOUD BOOM FROM MY VEHICLE, FOLLOWED BY CRACKLING SOUND. MY SUNROOF SHATTERED AS WELL AS THE FIXED PIECE BETWEEN MY WINDSHIELD AND MOVING PANE OF SUNROOF. …I DROVE THE VEHICLE TO A LOCAL DEALERSHIP AND WAS TOLD AN OBJECT STRUCK THE VEHICLE AND CAUSED THE DAMAGE TO THE VEHICLE. THE FIRST PANE OF GLASS HAD A 1 IN DIAMETER HOLE WITH A STARBURST PATTERN AND THE SECOND PANE HAD VERY LITTLE VISIBLE DAMAGE TO IT OTHER THAN THE HUNDREDS OF CRACKS IN IT. I AM CONCERNED ABOUT WHY THE FIRST PANE OF GLASS THAT IS ANGLED OUTWARD TO THE ROAD IS NOT MADE OF SAFETY GLASS OR METAL AND WAS CONSTRUCTED OF TEMPERED GLASS. I WAS LUCKY THAT I HAD |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | MY BLIND CLOSED AND THAT THE GLASS DID NOT SEPARATE FROM THE VEHICLE AND STRIKE ANY OF THE VEHICLES BEHIND ME. AS I TOLD THE GENTLEMEN AT THE DEALERSHIP, IF ROAD DEBRIS HITS MY VEHICLE I SHOULD NOT HAVE TO REPLACE A THIRD OF MY ROOF. ROCKS HAVE HIT MY WINDSHIELD AND CHIPPED IT, BUT FOR A ROCK TO HIT MY VEHICLE AND CAUSE SUCH EXTENSIVE DAMAGE IS POOR DESIGN OR QUALITY OF MANUFACTURING. *TR" |
| 40. | 01/28/2015 | 01/14/2015 | 2010 | E550 | 10679491 | ".… I WAS TRAVELING ON INDIANA HIGHWAY….DRIVING THE SPEED LIMIT OF 70 MILES PER HOUR. AS I WAS DRIVING, ALL OF A SUDDEN THERE WAS A LOUD EXPLOSION. I SWERVED TO THE LEFT IN THE VEHICLE BECAUSE I WAS UNSURE WHAT THE EXPLOSION WAS OR CAME FROM. AS SOON AS I HEARD THE EXPLOSION, THICK PIECES OF GLASS FELL FROM THE SUNROOF. LARGE PIECES OF GLASS FELL ON THE BACK SEAT. GLASS FELL ON THE PASSENGER SIDE AS WELL AS PIECES OF GLASS FELL ON MY SHOULDERS AND ON THE DRIVER'S SIDE FLOOR…. THERE WAS NO INDICATION OF OUTSIDE FORCES. I WAS VERY NERVOUS…. I PULLED OVER…AND EVALUATED MY VEHICLE. I WAS IN AMAZED BECAUSE THE SUNROOF HAD A WHOLE THE SIZE OF A BASKETBALL. I CALLED THE NEAREST MERCEDES BENZ DEALERSHIP TO SCHEDULE AN APPOINTMENT. …I TOOK MY VEHICLE TO MERCEDES BENZ AND ALSO CONTACTED HEADQUARTERS TO FILE A COMPLAINT. THIS INCIDENT WAS NOT CAUSED BY MY ACTIONS, NOR EXTERNAL FACTORS BUT THE MANUFACTURING OR DESIGN DEFECT OF THIS VEHICLE. I HAVE CONDUCTED FURTHER INVESTIGATION INTO THIS MATTER AND HAVE EVIDENCE OF OTHER MERCEDES |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | BENZ OWNERS WHOM THIS SAME PROBLEM OCCURRED. I SPOKEN WITH MERCEDES BENZ REGIONAL MANAGER…. SHE STATED MERCEDES BENZ WILL GIVE ME $1,000 TOWARDS THE REPAIR IF I SIGN A WAIVER NOT TO SUE. I REJECTED THIS OFFER BECAUSE THERE IS A DEFECT IN MERCEDES BENZ VEHICLES…." |
| 41. | 01/06/2015 | 01/06/2015 | 2013 | C250 | 10670568 | "AS I WAS DRIVING ON THE FREEWAY, I HEARD AND EXPLOSION FOLLOWED BY A RAIN SOUND, MY SUNROOF HAD EXPLODED AND THE GLASS CAN BACK DOWN. NOTHING HIT THE SUN ROOF, THE GLASS WAS POINTING OUT, IT ACTUALLY EXPLODED. AFTER RESEARCH I FOUND THIS IS COMMON IN MERCEDES AND I HAD NO IDEA THAT SOMETHING LIKE THIS WAS EVEN POSSIBLE. I HAVE HAD THE CAR FOR ONLY 3 MONTHS." |
| 42. | 12/23/2014 | 12/20/2014 | 2011 | ML550 | 10668095 | "DRIVING ON A FEEDER ROAD IN LIGHT TRAFFIC AT ABOUT 55 MPH, WE WERE STARTLED BY AN ENORMOUS LOUD EXPLOSIVE SOUND ON OUR SUNROOF…, LIKE A BOMB SOUND. PULLED OVER AND SLID THE INSIDE VENTED HEADLINER/CURTAIN BACK ABOUT 6 INCHES AND SAW A HOLE THE SIZE OF TWO FISTS PLUS SHATTERED GLASS. WE RECALL THAT WE WEREN'T FOLLOWING BEHIND ANY TRUCKS. MERCEDES DEALERSHIP ESTIMATED $2,777.00 TO REPLACE GLASS, DROP HEADLINER AND REMOVE BROKEN GLASS SHARDS/PIECE. MB DID NOT OFFER ANY EXPLANATION AS TO DEFECTIVE SUNROOF GLASS. WE OWNED NUMEROUS MODELS OF MERCEDES WITH SUNROOF AND NEVER EXPERIENCED SUCH A FRIGHTENING EPISODE. *TR" |
| 43. | 11/25/2014 | 11/25/2014 | 2013 | GLK350 | 10660904 | "THE SUNROOF…SPONTANEOUSLY EXPLODED WITH NO WARNING. NOTHING HIT THE ROOF OR ANY OTHER PART OF THE CAR. THE |

| | | | | | | WEATHER WAS ABOUT 36 DEGREES FAHRENHEIT, NOT TOO COLD, NOT TOO HOT. THERE WAS A LOUD BANG (LIKE THE SOUND OF A GUNSHOT) FOLLOWED BY 5 - 10 MINUTES OF CRACKLING AS THE SUNROOF GLASS BROKE INTO HUNDREDS OF PIECES…. I WAS DRIVING ABOUT 35 MPH AT THE TIME. THERE WAS NOTHING UNUSUAL THAT WOULD HAVE CAUSED THIS. *TR" |
|---|---|---|---|---|---|---|

43.     Consumers also post about panoramic sunroof explosions on other blogs and websites. For example, on July 30, 2014, one Mercedes owner shared his story and pictures on *MBWorld*.org, stating:

> I have a GL550 with approx 14,000 miles on it. I was driving from Moab to Lake Powell and the panoramic rough literally exploded. Scared the crap out of me! It wasn't a rock as there were no cars around us. We were in the middle of no where when it happened. It was about 105F outside so my guess is that it was caused by the heat.
>
> The dealership is refusing to cover this under warranty. They admit that it does[n]'t look like anything hit it and that it might be heat related. I plan on escalating this to MBUSA.
>
> Has anyone else had this happen to their GL?



12

---

12 https://mbworld.org/forums/gl-class-x166/550965-panoramic-roof-blew-up.html, last accessed July 2, 2019.

### Mercedes' Knowledge of the Defect

44.     Mercedes knew or should have known of the Defect due to, at least, direct communication from customers, dealership reports, customer complaints, NHTSA's investigation, as well as internal testing and procedures.

45.     As demonstrated above, customers informed Mercedes' authorized dealers that their panoramic sunroofs had spontaneously exploded. In some cases, the customers even made the authorized dealers aware that this was a widely reported problem.

46.     Other customers publicly complained about their spontaneously shattering panoramic sunroofs. They complained on Mercedes blogs, MBworld.org, the NHTSA website, and more.

47.     These complaints demonstrate that panoramic sunroofs frequently shatter within weeks or months of purchase, and the NHTSA was informed of this problem in Mercedes vehicles.

48.     Like other automobile manufacturers, Mercedes monitors NHTSA for information on emerging problems with its vehicles.

49.     On May 12, 2014, NHTSA opened an investigation of the panoramic sunroofs, initially focused on 2011-2013 Kia Sorento models, but the investigation was later expanded to include other vehicle manufacturers *including Mercedes*.[13]

50.     An article published on May 6, 2015 specifically reported on the Mercedes-Benz sunroof and panoramic sunroof shattering issue[14]

> Over the last several months, a surprising number of Mercedes-Benz owners have come forward to shed light on the same startling issue: shattering panoramic roofs and sunroofs. *Id.* at page 2.

---

[13] NHTSA Safety Issue ID: EA14-002, https://www.nhtsa.gov/recalls#vehicle, last accessed July 2, 2019.

[14] Hard, Andrew, "Sunroofs Shattering on Mercedes-Benz Cars, Cause Still Unknown", Digital Trend, May 6, 2015, https://www.digitaltrends.com/cars/mercedes-benz-panoramic-shattering-roof-owner-reports-pictures/, last accessed July 2, 2019.

Mercedes-Benz USA told us it was unable to comment on the issue, because "we don't have full purview on the topic." The automaker suggested consumers with affected vehicles contact customer service immediately to open an investigation, at 800-822-8987. *Id.* at page 3.

51.     As part of NHTSA's open investigation into the panoramic sunroof shattering safety issue, on April 14, 2016, NHTSA sent a letter to Mercedes requesting specific information regarding its vehicles with panoramic sunroofs and reported incidents of spontaneous shattering. *See* **Ex. A**, NHTSA General Order dated April 14, 2016. The detailed requests from NHTSA regarding Mercedes' panoramic sunroof, history, and shattering incidents are as follows:

<u>**Requests**</u>

1.    Describe the history of panoramic sunroofs in the vehicles you manufacture. Your response should include, but not be limited to, the reason(s) you decided to add panoramic sunroofs as an option, the model(s) and model year for which you first offered this option, and the timeline of the development and decision-making that led to the introduction of panoramic sunroofs.

2.    Identify and enumerate the total population of vehicles you manufactured that contain a panoramic sunroof as original equipment. Your response should be broken down by make, model, and model year.

3.    For each panoramic sunroof identified in your Response to Request No. 2, provide the following information: (i) the name and contact information for the sunroof manufacturer; (ii) the number of glass panels; (iii) the size of the glass panel(s) (length x width in centimeters); (iv) the thickness of the glass panel(s) (millimeters); and (v) the standard to which the sunroof was manufactured. Your response should include an explanation of any changes made between models and model years.

4.    Identify, by make, model, and model year, the number of incidents involving an allegation that a panoramic sunroof has spontaneously shattered, and state the number of injuries or fatalities associated with such incidents.

5.    File a report of every incident involving an allegation that a panoramic sunroof has shattered spontaneously in a vehicle manufactured by you, of which you are aware by any means (including but not limited to consumer complaints, lawsuits, and media reports). The report shall include the following information: (i) the date on which you were first notified or learned of the incident; (ii) the name of the individual involved in the

incident; (iii) the contact information for counsel representing that individual (if applicable); (iv) the make, model, and model year of the vehicle; (v) the vehicle identification number (VIN); (vi) the date, location, and description of the incident (including whether the vehicle was stationary or in motion when the incident occurred); (vii) the number and description of any injuries or fatalities; (viii) a summary of your current understanding as to the nature of the incident and/or the cause of the breakage (including whether a rock or other item of road debris was found); and (ix) a summary of any other information relevant to your investigation of the incident. Your report should be in the format attached as Exhibit A.

Dated: April 14, 2016

*Id.*

## Dangers Posed to Class Occupants

52.     NHTSA, KATRI, and some automobile manufacturers have acknowledged that the spontaneous failure of panoramic sunroofs caused by the Defect endangers drivers, passengers, and others on the road.

53.     For example, "[g]lass shattering while driving may distract the driver, and the resulting glass particles which enter the passenger compartment may injure occupants."[15]

54.     In fact, even Mercedes was forced to acknowledge that a safety risk could be posed by defective panoramic sunroofs, when it instituted a recall of fifty-three model year 2016 C300 units for improper bonding of the panoramic sunroof, allowing the roof to potentially fly off of the car.[16]

55.     In a 2017 recall, relating to GLC Mercedes vehicles where the panoramic sunroof's frontal and side panels failed to meet the bonding specifications resulting in sunroof panels separating from the vehicles, Mercedes acknowledged that "[a] displaced [panoramic sunroof]

---

[15] NHTSA ID EA 14-002, https://www.nhtsa.gov/recalls#vehicle, last accessed July 2, 2019.

[16] https://www.nhtsa.gov/vehicle/2016/MERCEDES-BENZ/C-CLASS%252520PHEV/4%252520DR/FWD; Recall Campaign Number 16V08700. This website was last visited on July 2, 2019. *See also* https://www.edmunds.com/car-news/2016-mercedes-benz-c300-c450-amg-4matic-recalled-for-panoramic-sunroof-defect.html, last visited on July 2, 2019.

panel could increase the risk of a crash and/or injury for following traffic."[17]

56.     A panoramic sunroof is an expensive upgrade option that costs thousands of dollars to replace.

57.     A reasonable person considering whether to purchase or lease a Mercedes vehicle would want to be informed about the panoramic sunroof defect before deciding whether to spend the additional money.

58.     When panoramic sunroofs shatter because of the Defect while the Class Vehicles are occupied, occupants report a sudden, unexpected and extremely loud noise, followed by shards of glass raining down onto the driver and passengers. Drivers report that the falling shards of glass have injured them, their passengers and have caused damage to their Class Vehicles. Drivers have also reported a number of near-miss accidents that occurred after they were startled or distracted because the sunroof shattered while the vehicle was in motion. Both Mercedes and NHTSA have received reports of injuries caused by sunroof failure.

59.     Other manufacturers recognize the safety risk. When Volkswagen initiated a safety recall for shattering panoramic sunroofs, it acknowledged that drivers "could be injured by falling glass," and that "[i]f the glass panel were to break while the vehicle is in motion, it could cause the driver distraction, increasing the risk of a crash."[18]

60.     When Hyundai initiated its recall, it too acknowledged that the shattering of panoramic sunroofs "relates to motor vehicle safety," including posing a risk of injury to vehicle occupants. In connection with the Hyundai recall, NHTSA wrote that the breaking of the

---

[17] Part 573 Safety Recall Report, 17V-715, https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V715-1335.PDF, last accessed July 2, 2019.
[18] https://media.vw.com/en-us/releases/375, last accessed July 2, 2019.

panoramic sunroof could lead "to personal injury or a vehicle crash."[19]

61.     In connection with an Audi recall, NHTSA wrote that "should the sunroof's glass break while the vehicle is in use, the falling glass could cut and injure the driver or passengers [and] could also distract the driver, increasing the risk of a crash."

62.     KATRI concluded that the sudden shattering of a panoramic sunroof while driving may cause "abrasions due to shattered glass" and also cause the "risk of secondary accidents."

63.     In December of 2012, KATRI launched an investigation that culminated in a November 2013 meeting with numerous car manufacturers in Seoul, South Korea, where KATRI announced its finding that the ceramic tint in panoramic sunroofs substantially weakened the glass compromising its safety.

64.     KATRI recommended widespread recalls—a recommendation unheeded by Mercedes.

65.     It is beyond reason that Mercedes was unaware of recalls in the automotive industry regarding their own defective panoramic roofs.

66.     All this information was and remains available to Mercedes.

67.     Nevertheless, Mercedes refuses to cease manufacturing and selling Class Vehicles that are unsafe because of the existence of the defective panoramic sunroofs.

**Mercedes Refuses to Warn Drivers**

68.     Despite the number of complaints and the danger posed by the Defect, Mercedes conceals its existence from current and potential customers alike. Mercedes neither warns consumers before the sale when they are considering a purchase, at the point of sale/lease, nor does Mercedes warn/disclose the Defect to those who have experienced a shattered sunroof bringing

---

[19] https://static.nhtsa.gov/odi/inv/2012/INCLA-PE12027-8403.PDF, last accessed July 2, 2019.

their vehicle in for repairs. Mercedes knows of the Defect yet continues to profit from the sale and lease of Class Vehicles to unwitting customers, making no effort to alert consumers of the risk caused by the defective panoramic sunroofs.

69.     Mercedes conceals the Defect even though it knows it is not reasonably discoverable by consumers unless they experience a failure and are exposed to the attendant safety risks.

70.     Mercedes remains silent even as it continues to receive complaints from concerned drivers and the NHTSA investigators.

71.     As a result of Mercedes' inaction and silence, consumers are unaware that they purchased or leased a Class Vehicle which has a defective sunroof, and continue to drive these unsafe Class Vehicles. In addition, consumers who have experienced a failure and bring their Class Vehicles to a dealership for repairs are not told that identically defective sunroofs are installed as replacements in their Class Vehicles.

72.     Other manufacturers who have had vehicles with similar panoramic sunroof problems—such as Audi, Hyundai, and Volkswagen—have voluntarily initiated safety recalls as a result, notifying drivers of the danger and offering to repair the sunroofs free of cost.

**Mercedes' Deceptive Warranty Practices**

73.     The relevant terms of the Mercedes' New Vehicle Limited Warranty 2013-present are substantially the same: they are backed by a bumper-to-bumper warranty that lasts for four years or 50,000 miles, whichever comes first.[20] Covered items include:

> DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicles that any authorized Mercedes-Benz Center will make any

---

[20]     *See* Mercedes-Benz Service and Warranty Information 2016, https://www.mbusa.com/vcm/MB/DigitalAssets/pdfmb/serviceandparts/service_warranty_information_booklet.pdf, last accessed July 2, 2019.

repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period.[21]

74.     Glass is specifically excluded in the warranty coverage but for this exception:

>   DAMAGE TO GLASS: Glass breakage or scratches are not *covered unless positive physical proof of a manufacturing defect can be established*.[22]

75.     Plaintiff and other class members experienced damage from the sunroof defect within the warranty periods of their Class Vehicles.

76.     Plaintiff and the class members reasonably expected that all damage that resulted from the panoramic sunroof defect would be covered under the warranty, and that they would not be charged anything for such repairs.

77.     Mercedes has systematically denied coverage with respect to the defective panoramic sunroofs. Plaintiff and class members have been forced to incur substantial repair bills and other related damages, including being forced to makes claims under their automotive insurance policies and incurring substantial deductibles.

**Mercedes' Brand Message and Advertisements Related to Panoramic Sunroofs**

78.     The Mercedes brand is built on a message of "quality, performance, safety and heritage."[23] According to Mercedes, "Peace of mind is what makes luxury possible," and thus Mercedes is committed "[t]o deliver[ing] the best or nothing, safety must come first."[24]

79.     Mercedes assures customers that its vehicles come "[w]ith an abundance of safety innovations offered as standard features, our vehicles are engineered to protect you in ways you

---

[21] *Id.* at p. 11.

[22] *Id.* at p. 16 (emphasis added).

[23] Mercedes-Benz Brand Communications Standard, August 2015, https://static1.squarespace.com/static/50749503e4b0fa0ffd4b65f5/t/56142bd2e4b0e26258e39c6c/14441625142 16/BrandStandards_08.20.15.pdf, last accessed July 2, 2019; *see also https://www.mbusa.com/mercedes/benz*, last accessed July 2, 2019.

[24] https://www.mbusa.com/mercedes/benz/safety, last accessed July 2, 2019.

might never have imagined."[25]

80.     As the advertisements below confirm, Mercedes promises the safety and superiority of its vehicles, while emphasizing, as a defining feature, the panoramic sunroofs.

81.     In the below E-Class panoramic sunroof advertisement, Mercedes states: "Perhaps it's because no other automaker has the engineering strength to match style with safety like Mercedes-Benz."[26]



82.     Yet, as set forth herein, other automakers have successfully engineered panoramic sunroofs with both style and greater safety.

---

[25] *Id.*
[26] https://static.beepi.com/Brochures/27121.pdf, last accessed November 16, 2016.

83.     The Mercedes-Benz 2015 GLA Brochure[27] touts the fun and functional amenities of the model, as well as safety:

### Put the fun back in functional.

Practically luxurious doesn't mean "almost but not quite" in the GLA. From front seats with memory to a power liftgate, its standard amenities may be surprising at the GLA's price, but nothing less than you'd expect in a Mercedes-Benz. Its innovative options overdeliver, too. A GLA can help you find a parking space, then back itself in. It'll embrace you in sport seats with built-in ambient lighting. And surround you in music from your own library, or from all seven continents.

84.     The Brochure continues, "[w]hen you drive a GLA, you're surrounded by a legacy of safety innovation that's been setting standards for the industry for more than 60 years."[28] The panoramic sunroof is a defining marketing feature that is showcased in the 2015 GLA Brochure:

**Sunshine, moonlight or an inner glow.** The available Panorama roof lets all five passengers take in the sky via an expanse of heat-rejecting glass. The power tilt/sliding front section lets you take in a breeze, too. The Interior Package brings you the tactile and visual pleasures of hand-fitted leather upholstery, precise topstitching of the upper dash, and deeply contoured sport seats whose four integrated head restraints feature built-in LED ambient downlighting.



[29]

---

[27]         http://www.auto-brochures.com/makes/Mercedes_Benz/GLA-Class/Mercedes%20Benz_US%20GLA-Class_2015.pdf, last accessed July 2, 2019.
[28] *Id.*
[29] *Id.*

85.     Similar representations are made in Mercedes' 2015 CLA Brochure, which reiterates that the CLA class "comes with a legacy of safety innovation that's been setting the standards of the industry for over 60 years." [30]

86.     The 2015 CLA Brochure also highlights the panoramic sunroof as a luxury feature:



A **Panorama roof** is a class-exclusive option. The super-sized power glass sunroof tilts up for draft-free ventilation, or slides open for a breeze. [31]

## PLAINTIFF'S EXPERIENCE

87.     On January 15, 2018, Plaintiff Leika Dumond purchased a certified pre-owned 2014 Mercedes-Benz CLA-250 with panoramic sunroof from Long Island VW in New York for her own personal, family, and household use. She loved Mercedes and had wanted one for years, but did not want to purchase a car on that basis alone. So she researched several types of cars before making a decision about which one to purchase. Safety was a significant factor in her research and, ultimately, her decision. She chose the CLA-250 largely because of its safety and

---

[30] https://www.mbusa.com/vcm/MB/DigitalAssets/pdfmb/brochures/2014_CLA.pdf, last accessed July 2, 2019.
[31] *Id.*

because it was aesthetically pleasing, especially because it had a panoramic sunroof feature that she had not seen on other types of cars.

88.     On May 1, 2018, at approximately 2:00PM, Plaintiff was driving to a job interview in her 2014 Mercedes CLA-250, when the panoramic sunroof suddenly shattered. At the time, she was traveling around 45 mph on the 280 West Highway in New Jersey. It was a clear, sunny afternoon. The outside temperature was about 80 degrees. Although other cars were on the road, there was no traffic on the highway. Plaintiff had been driving for about twenty minutes when she was startled by a loud bang.  In her frightened and shocked state, she almost swerved, but was able to keep control of the vehicle's steering wheel. She saw and heard pieces of glass falling into and flying away from the car. She pulled over to inspect what had happened. Once out of the car, she called her insurance company as well as Mercedes Benz of Caldwell and informed them of the incident. Mercedes Benz of Caldwell instructed Plaintiff to drive her vehicle to their dealership. While she was apprehensive about doing so, she complied, missing her job interview as a result.

89.     Below are photographs of Plaintiff's shattered sunroof:









90.     Plaintiff had the sunroof replaced at Mercedes Benz of Caldwell. She was required to pay $1,000.00 out of her pocket to cover her deductible for the replacement sunroof. Her insurance company covered the remaining cost. She also had to get a rental car which her insurance covered.

91.     Plaintiff is fearful that the replacement sunroof glass is the same type of glass that Mercedes originally installed and, as a result, is concerned about her safety in regard to another sunroof explosion. She fears that the panoramic sunroof may explode at any time and therefore avoids using the feature.

92.     Had Mercedes disclosed the panoramic sunroof defect at the point of sale, Plaintiff would not have purchased the vehicle or she would have paid substantially less. In addition, she would not have suffered the economic damages she sustained. She did not receive the benefit of the bargain.

## **CLASS ACTION ALLEGATIONS**

93.     Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of herself and members of the following proposed classes:

**New York Class:**

*During the fullest period allowed by law, all persons and entities who purchased or leased a Class Vehicle in New York equipped with a factory-installed panoramic sunroof.*

**New Jersey Class:**

*During the fullest period allowed by law, (i) all persons and entities residing in New Jersey who purchased or leased a Class Vehicle equipped with a factory-installed panoramic sunroof, (ii) all persons and entities who purchased or leased a Class Vehicle equipped with a factory-installed panoramic sunroof in the state of New Jersey.*

94.     Class Vehicles include but are not limited to all models below that are equipped with factory-installed panoramic sunroofs:

- 2003-present C-Class;
- 2007-present CL-Class;
- 2013-present CLA-Class;
- 2003-present E-Class;
- 2008-present G-Class;
- 2007-present GL-Class;
- 2013-present GLK/GLC-Class;
- 2012-present ML-Class;
- 2010-present M-Class;
- 2015 Mercedes Maybach S-600;
- 2007-present R-Class;
- 2013-present S-Class;
- 2013-present SL-Class; and
- 2013-present SLK-Class.

95.     At the class certification stage, in response to discovery and pursuant to any instruction by the Court, Plaintiff reserves the right to modify the class definitions.

96.     Excluded from the proposed classes are Mercedes; any affiliate, parent, or subsidiary of Mercedes; any entity in which Mercedes has a controlling interest; any officer, director, or employee of Mercedes; any successor or assign of Mercedes; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff; and anyone who purchased the Class Vehicle for the purpose of resale.

97.     Plaintiff meets the prerequisites of Rule 23(a) to bring this action on behalf of the above classes.

98.     **Ascertainability:** Members of the proposed classes are readily ascertainable because the class definitions are based upon objective criteria.

99.     **Numerosity**. Mercedes sold many thousands of Class Vehicles nationwide, including a substantial number in New Jersey and New York. Members of the proposed classes

likely number in the thousands and are thus too numerous to practically join in a single action. Moreover, it is impracticable to try to join all potential plaintiffs due to their numbers and geographic dispersion. Class members may be notified of the pendency of this action by mail, supplemented by public notice (if deemed necessary or appropriate by the Court).

100.   **Commonality and Predominance**. Common questions of law and fact exist as to all proposed members of the classes and predominate over questions affecting only individual class members. These common questions include:

(a)   Whether the sunroofs in the Class Vehicles have a propensity to spontaneously shatter due to a design and/or manufacturing defect;

(b)   Whether Mercedes knew or should have known that its panoramic sunroofs have a propensity to spontaneously shatter due to a design and/or manufacturing defect, and if so, when it discovered this;

(c)   Whether the knowledge of this propensity to shatter would be important to a reasonable person, because, among other things, it poses an unreasonable safety hazard;

(d)   Whether Mercedes failed to disclose and concealed from potential customers its knowledge of the existence of the sunroofs' propensity to spontaneously shatter;

(e)   Whether Mercedes breached its express warranty obligations under New York law;

(f)   Whether the Court may enter an injunction requiring Mercedes to notify owners and lessees about the sunroofs' propensity to spontaneously shatter;

(g)   Whether the Court may enter an injunction requiring Mercedes to cease its practice of replacing shattered panoramic sunroofs with identically defective replacement sunroofs;

(h)    Whether Mercedes' conduct, as alleged herein, violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

(i)    Whether Mercedes' conduct, as alleged herein, violates the consumer protection laws of New Jersey and New York; and

(j)    Whether Mercedes' conduct, as alleged herein, entitles Plaintiff and the class members to restitution under the laws of their respective states.

101.   **Typicality**. Plaintiff's claims are typical of the claims of the proposed classes. Plaintiff and the members of the proposed classes all purchased or leased Class Vehicles with panoramic sunroofs that have a propensity to spontaneously shatter, giving rise to substantially the same claims. As illustrated by class member complaints, some of which have been excerpted above, each vehicle model included in the proposed classes suffers from the same defect.

102.   **Adequacy**. Plaintiff is an adequate representative of the proposed classes because her interests do not conflict with the interests of the members of the classes she seeks to represent. Plaintiff has retained counsel who are competent and experienced in complex class action litigation, and will prosecute vigorously on class members' behalf.

103.   **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Mercedes economically feasible. Even if class members themselves could afford to sue Mercedes, the court system should not be forced to handle such individualized litigation. In addition to the burden and expense of managing many actions arising from the defective sunroofs, individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

104.　　In the alternative, the proposed classes may be certified because:

(a)　　the prosecution of separate actions by the individual members of the proposed classes would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Mercedes;

(b)　　the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

(c)　　Mercedes has acted or refused to act on grounds generally applicable to the proposed classes, thereby making appropriate final and injunctive relief with respect to members of the proposed classes as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

105.　　**Discovery Rule**. Plaintiff and class members' claims accrued upon discovery that the panoramic sunroofs installed in their Class Vehicles were prone to spontaneous failure. While Mercedes knew and concealed the fact that the panoramic sunroofs installed in the Class Vehicles have a defect that causes spontaneous failure, Plaintiff and class members could not and did not discover this fact through reasonable diligence.

106.　　**Active Concealment Tolling**. Any statutes of limitations are tolled by Mercedes' knowing and active concealment of the fact that the panoramic sunroofs installed in the Class Vehicles suffered from the Defect. Mercedes kept Plaintiff and class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on their part. The details of Mercedes' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and class members. Plaintiff and class members could not have reasonably discovered the fact that the panoramic sunroofs installed in their Class Vehicles were defective.

107. **Estoppel**. Mercedes was and is under a continuous duty to disclose to Plaintiff and class members the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. At all relevant times, and continuing to this day, Mercedes knowingly, affirmatively, and actively concealed the true character, quality, and nature of the panoramic sunroofs installed in the Class Vehicles. The details of Mercedes' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and class members. Plaintiff reasonably relied upon Mercedes' active concealment. Based on the foregoing, Mercedes is estopped from relying on any statutes of limitation in defense of this action.

108. **Equitable Tolling**. Mercedes took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with defective panoramic sunroofs. The details of Mercedes' efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and class members. When Plaintiff learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Mercedes fraudulently concealed its above-described wrongful acts. Therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## CLAIMS FOR RELIEF

### COUNT I
**Breach of Express Warranty**
**(Plaintiff individually and on behalf of the New York Class)**

109. Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

110. In connection with the purchase or lease of each of its new vehicles, Mercedes provides an express New Vehicle Limited Warranty ("NVLW") for a period of four years or

50,000 miles, whichever occurs first. This NVLW exists to cover "any repairs or replacements necessary to correct defects in material or workmanship."

111.     Mercedes breaches these warranties by selling and leasing Class Vehicles with the panoramic sunroof defect, requiring repair or replacement within the applicable warranty periods, and refusing to honor the warranties with free repairs or replacements during the applicable warranty periods.

112.     Mercedes further breaches these warranties by not correcting the Defect. Although Mercedes warrants that it will correct defects in materials and workmanship in Class Vehicles, Mercedes instead replaces shattered sunroofs in the Class Vehicles with identical defective sunroofs and thus has not corrected the Defect. Mercedes has failed and refused to conform the panoramic sunroofs in the Class Vehicles to the express warranty. Mercedes' conduct has been void of any attempt to disclaim liability for its actions.

113.     Plaintiff and class members notified Mercedes of the breach within a reasonable time or else they were not required to do so, because affording Mercedes a reasonable opportunity to cure its breach of written warranty would have been futile. Mercedes also knew of the Defect and chose to conceal it and failed to comply with its warranty obligations.

114.     Mercedes' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under these circumstances. Mercedes' warranty limitation is unenforceable at least because it knowingly sold a defective product without informing consumers of the Defect.

115.     Mercedes' attempt to limit its express warranty in a manner that would result in replacing its defectively designed panoramic sunroofs with identical defective sunroofs caused the warranty to fail its essential purpose and renders the warranty null and void.

116.    The time limits contained in Mercedes' warranty period were and are also unconscionable and inadequate to protect Plaintiff and class members. Among other things, Plaintiff and class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Mercedes. A gross disparity in bargaining power exists between Mercedes and the class members because Mercedes knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before the end of the vehicles' useful lives. In many instances, detection of the Defect would only occur once the Defect manifested. By making misleading representations and/or omissions about the Defect, Mercedes prevented Plainitff and Class Members from timely exercising their rights under the warranties.

117.    Plaintiff and class members have complied with all obligations under the warranty, or otherwise have been excused from performance of those obligations as a result of Mercedes' conduct described herein.

118.    As a direct and proximate result of Mercedes' breach, Plaintiff and class members bought or leased Class Vehicles they otherwise would not have, overpaid for their Class Vehicles, did not receive the benefit of their bargain, and suffered at least through diminution in value. Plaintiff and class members have also incurred and will continue to incur costs for repair and replacement of defective panoramic sunroofs and damages resulting from the spontaneous shattering of the sunroofs.

119.    Accordingly, recovery by Plaintiff and class members is not restricted to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of class members, seeks all remedies as allowed by law.

120.    Plaintiff and class members are entitled to legal and equitable relief against Mercedes, including damages, consequential damages, specific performance, attorneys' fees, costs

of suit, and such further relief as the Court may deem proper. Plaintiff and class members have been damaged in an amount to be determined at trial.

## COUNT II
### Breach of Implied Warranty of Merchantability
### (Plaintiff individually and on behalf of the New York Class)

121.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

122.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Mercedes warranted that the Class Vehicles including their panoramic sunroofs would be merchantable, fit for their ordinary purposes for which vehicles with built-in panoramic sunroofs are used, pass without objection in the trade, be of fair and average quality, and conform to promises and affirmations of fact made by Mercedes.

123.    This implied warranty of merchantability is part of the basis for the benefit of the bargain between Mercedes and Plaintiff and class members.

124.    At the point of sale, however, Mercedes breached the implied warranty of merchantability because its Class Vehicles were defective as alleged herein, would not pass without objection, were not fit for normal use, and failed to conform to the standard of like products in the trade.

125.    These Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which vehicles are used. Specifically, the Class Vehicles all were fitted with defective panoramic sunroofs having the propensity to spontaneously explode.

126.    Mercedes knew or, in the exercise of reasonable care, should have known that the Class Vehicles were defective prior to sale of these cars to Plaintiff and class members.

127.     Mercedes was provided notice of these issues by investigation of NHTSA, internal complaints including internet forum complaints, and communications sent by Plaintiff and others within a reasonable amount of time after the allegations of Class Vehicle defects became public.

128.     Any implied warranty limitation cannot be enforced here because the warranty is unconscionable. For example, a substantial disparity in the parties' relative bargaining power existed such that Plaintiff and class members were unable to derive a substantial benefit from their warranties. A disparity existed because Mercedes was aware that its Class Vehicles were inherently defective; Plaintiff and class members had no notice or ability to detect the problem; Mercedes knew that Plaintiff and class members had no notice or ability to detect the problem; and Mercedes knew that Plaintiff and class members would bear the cost of correcting any defect.

129.     The element of privity, if applicable here, exists because Mercedes had direct written communications with Plaintiff and class members regarding their Class Vehicles in the form of warranties, manuals, communications regarding defect failures, or similar documents. Mercedes advertised the Class Vehicles via direct communications with Plaintiff and class members through television, internet, magazine advertisements, and the like. The dealers who sold the Class Vehicles to Plaintiff and class members are Mercedes' agents. Mercedes entered into contracts with Plaintiff and class members through warranties, including extended warranties; and Plaintiff and class members are third-party beneficiaries of warranties that run from Mercedes to their dealer-agents. Further, Mercedes designed and manufactured the Class Vehicles, intending Plaintiff and class members to be the ultimate users of the vehicles.

130.     As a direct and proximate result of Mercedes' breach of its implied warranty of merchantability, Plaintiff and class members purchased defective products, and thus have been damaged. Plaintiff and class members seek damages in an amount to be determined at trial.

## COUNT III
**Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq*.**
**(Plaintiff individually and on behalf of the New York Class)**

131.    Plaintiff re-alleges and incorporates by reference the above paragraphs as if fully set forth herein.

132.    Plaintiff and members of the classes are "consumers" within the meaning of 15 U.S.C. § 2301(3).

133.    Mercedes is a "supplier" and "warrantor" within the meanings of 15 U.S.C. § 2301(4)-(5).

134.    Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

135.    Mercedes provided a written warranty under 15 U.S.C. § 2301(6) to all members of the classes under which Mercedes warranted that the Class Vehicles would be free from defects for a minimum of four years or 50,000 miles, whichever comes first.

136.    Mercedes is required to repair or replace panoramic sunroofs that spontaneously shatter during the warranty period at no charge.

137.    Plaintiff and class members own Class Vehicles that experienced sunroof shattering during the period of warranty coverage.

138.    Mercedes breached its new vehicle limited warranty by failing to repair or replace the sunroofs at no charge to Plaintiff and class members.

139.    Mercedes' breach of warranty deprived Plaintiff and class members of the benefit of their bargain.

140.    The amount in controversy of the Plaintiff's individual claims meets or exceeds the sum or value of $25.00. In addition, the amount in controversy meets or exceeds the sum or value

of $50,000.00 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

141.    Mercedes has been afforded reasonable opportunity to cure its breaches of warranty. Pursuant to the provisions of 15 U.S.C. § 2310(e), Plaintiff, on behalf of herself and class members, has sent notice to Mercedes' principal place of business to provide it with reasonable opportunity to correct its business practices and cure its breach of warranties under the MMWA. Mercedes has not cured the breach of warranty described above and continues to deny warranty coverage when class members present their Class Vehicles for repair after their panoramic sunroofs spontaneously shattered.

142.    In addition, resorting to any informal dispute settlement procedure or affording Mercedes another opportunity to cure its breach of warranty is unnecessary and futile. Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, as Mercedes has repeatedly failed to disclose the panoramic sunroof defect or provide repairs at no cost and, as such, has indicated no desire to participate in such a process at this time. Any requirement under the MMWA or otherwise that Plaintiff or class members submit to any informal dispute settlement procedure or otherwise affording Mercedes a reasonable opportunity to cure its breach of warranty—that requirement is excused and/or has been satisfied.

143.    As a direct and proximate result of Mercedes' warranty breach, Plaintiff and class members sustained damages and other losses to be determined at trial. Mercedes' conduct damaged Plaintiff and class members, who are entitled to recover damages, specific performance, costs, attorneys' fees, and other appropriate relief.

## COUNT IV
### Unjust Enrichment
**(Plaintiff individually and on behalf of the New York Class and the New Jersey Class)**

144.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

145.    As described above, Mercedes through its associated dealerships sold Class Vehicles to Plaintiff and class members even though the panoramic sunroofs installed in those Class Vehicles were defective and posed a safety hazard. Mercedes, and its associated dealerships, failed to disclose any knowledge of the sunroof defect and its attendant risks at the point of sale or otherwise.

146.    Mercedes, directly and/or indirectly through its authorized dealerships and repair facilities, unjustly charges Plaintiff and class members for repairs and/or replacement of the defective panoramic sunroofs without disclosing that the Defect is widespread and that the repairs do not address the root cause of the Defect.

147.    As a result of its acts and omissions related to the defective sunroofs, Mercedes either directly and/or indirectly obtained monies that rightfully belong to Plaintiff and class members.

148.    Mercedes directly and/or indirectly appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiff and class members who, without knowledge of the Defect, paid a higher price for their Class Vehicles than they were worth. Mercedes also, either directly and/or indirectly, received monies for Class Vehicles that Plaintiff and class members would not have otherwise purchased.

149.    It would be inequitable and unjust for Mercedes to retain these wrongfully obtained profits.

150.    Mercedes' retention of these wrongfully-acquired profits would violate fundamental principles of justice, equity, and good conscience.

### COUNT V
**Violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*
("NJCFA")
(Plaintiff, individually and on behalf of the New Jersey Class)**

151.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

152.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.* ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

153.    Plaintiff and New Jersey class members are consumers who purchased Class Vehicles.

154.    Plaintiff and New Jersey class members are residents of New Jersey and/or purchased their Class Vehicles in New Jersey.

155.    Mercedes, Plaintiff, and the New Jersey class members are "persons" within the meaning of the New Jersey Consumer Fraud Act.

156.    Mercedes advertises and sells the Class Vehicles in New Jersey.

157.    In the course of business, Mercedes misrepresented, concealed, suppressed, and omitted material facts concerning the Class Vehicles.

158.    As described above, Mercedes misrepresented the safety, quality, and character of its panoramic sunroofs at least through its advertising and warranty statements. These statements are unlawful under the NJCFA whether Mercedes intended to mislead its consumers with them

and/or whether Mercedes knew them to be false or misleading.

159. As described above, Mercedes also concealed, omitted, and/or suppressed the defective nature of its panoramic sunroofs from its consumers, including Plaintiff. Mercedes' advertising did not disclose the Defect. Mercedes did not inform any potential buyers of the Defect. The sales person that sold Plaintiff her vehicle did not disclose the Defect. Even after purchase, Mercedes took no steps to inform Plaintiff, or other class members, of the Defect. Mercedes conduct is unlawful under NJCFA.

160. Mercedes had and has an ongoing duty to all Mercedes' customers to disclose the Defect. Mercedes represented to consumers the safety and quality of its product, despite knowing that the panoramic sunroofs did not meet these standards. Mercedes was in the unique position of knowing the true nature and defect in its panoramic sunroofs, was aware of incidents of its panoramic sunroofs spontaneously exploding as well as the other numerous incidents involving other automobile manufacturers. In addition, Mercedes has been aware of the NHTSA investigation into the same since 2014 and has been a subject of the investigation since April 2016. As shown by the information provided by Mercedes owners to NHTSA above, Mercedes has received notice of the defective sunroofs since at least 2014, yet Mercedes never informed consumers of the Defect and consumers had no way of knowing this on their own. In other words, Plaintiff and class members had no way of discerning that Mercedes' representations about its panoramic sunroof were false and misleading due to Mercedes' concealment, omissions, and suppression. Plaintiff and class members did not and could not unravel Mercedes' deception on their own. In fact, it took NHTSA, KATRI, other manufacturer recalls, Mercedes blogs, and internet forums to bring these issues to light.

161. By misrepresenting the nature and quality of its product, and failing to disclose the

Defect or facts about the Defect, as described herein, known to Mercedes or available to Mercedes upon reasonable inquiry, Mercedes deprived consumers of material facts about the safety, functionality, quality, and character of the Class Vehicles. By failing to release material facts about the Defect, Mercedes curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep those facts from consumers.

162.   As described above, Mercedes also concealed, omitted, and/or suppressed, its responsibility and obligation to repair or replace the defective panoramic sunroofs under warranty at no cost to Plaintiff or the other New Jersey class members.

163.   Mercedes' conduct as described herein is unethical, oppressive, or unscrupulous and/or it presented a risk of substantial injury to consumers. Such acts are unfair practices in violation of the NJCFA.

164.   Mercedes knew or should have known that its conduct violated the NJCFA. Negative publicity via NHTSA, trade magazines, and the internet regarding the panoramic sunroof defect is now being disclosed. The value of the Class Vehicles has therefore greatly diminished. In light of the stigma attached to those Class Vehicles by Mercedes' conduct, they are now worth significantly less than they otherwise would be worth.

165.   Mercedes' concealment of the panoramic sunroof defect was material to Plaintiff and class members. Had Mercedes disclosed the panoramic sunroof defect at the point of sale, Plaintiff and class members would not have purchased the Class Vehicles or would have paid substantially less for them. In addition, they would not have suffered the economic damages they sustained. Given Mercedes' conduct, Plaintiff and the New Jersey class members did not receive the benefit of their bargains.

166.   Mercedes' violations present a continuing risk to Plaintiff as well as the general

public. Mercedes' unlawful acts and practices complained of herein affect the public interest.

167.    As a direct and proximate result of Mercedes' violations of the NJCFA, Plaintiff and class members have suffered ascertainable loss, injury-in-fact, and/or actual damage. Plaintiff and class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or if the true nature of the defective panoramic sunroofs had been disclosed, they would have paid significantly less for them. Plaintiff and class members also suffered diminished value of their Class Vehicles, as well as lost or diminished use.

168.    Mercedes is liable to Plaintiff and the New Jersey class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Mercedes' unfair and deceptive practices, and any other just and proper relief under the NJCFA.

**COUNT VI**

**Violations of the New York General Business Law § 349, Unfair and Deceptive Trade Practices**
**(Plaintiff individually and on behalf of the New York Class)**

169.    Plaintiff re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

170.    Pursuant to New York General Business Law ("GBL") § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

171.    Plaintiff and class members are consumers who purchased Class Vehicles in the State of New York.

172.    Mercedes is engaged in trade or commerce in the State of New York, that was consumer-oriented, in that Mercedes markets, distributes and sells the Class Vehicles in the state of New York.

173.     In the course of business, Mercedes engaged in deceptive acts and practices in that Mercedes misrepresented, concealed, suppressed, and omitted material facts concerning the Class Vehicles.

174.     As more full detailed above, Mercedes misrepresented the safety, quality, and character of its panoramic sunroofs through, at minimum, advertising and warranty statements. Mercedes also concealed, omitted, and/or suppressed the defective nature of the panoramic sunroofs from consumers, including Plaintiff. Mercedes' advertising did not disclose the Defect and Mercedes did not inform any potential buyers of the Defect. The sales person that sold Plaintiff her vehicle did not disclose the Defect. Even after purchase, Mercedes took no steps to inform Plaintiff, or other class members, of the Defect. Mercedes' conduct is unlawful because Mercedes knew of the Defect prior to sale of the Class Vehicles.

175.     Mercedes had and has an ongoing duty to all Mercedes' customers to disclose the Defect. Mercedes represented to consumers the safety and quality of its product, despite knowing that the panoramic sunroofs did not meet these standards. Mercedes was in the unique position of knowing that the manner in which the panoramic sunroofs were designed and manufactured was defective and that the panoramic sunroofs were prone to spontaneous shattering. In addition, Mercedes has been aware of the NHTSA investigation into the same since 2014 and has been a subject of the investigation since April 2016. As shown by the information provided by Mercedes owners to NHTSA above, Mercedes has received notice of the defective sunroofs since at least 2014, yet Mercedes never informed consumers of the Defect and consumers had no way of knowing this on their own. In other words, Plaintiff and class members had no way of discerning that Mercedes' representations about its panoramic sunroof were false and misleading due to Mercedes' concealment, omissions, and suppression.

176.    By misrepresenting the nature and quality of its product, and failing to disclose the Defect or facts about the Defect, as described herein, known to Mercedes or available to Mercedes upon reasonable inquiry, Mercedes deprived consumers of material facts about the safety, functionality, quality, and character of the Class Vehicles. By failing to release material facts about the Defect, Mercedes curtailed and reduced the ability of consumers to take notice of material facts about their vehicle, and it affirmatively operated to hide or keep those facts from consumers.

177.    As described above, Mercedes also concealed, omitted, and/or suppressed, its responsibility and obligation to repair or replace the defective panoramic sunroofs under warranty at no cost to Plaintiff or the other class members.

178.    Mercedes' representations regarding and concealment of the panoramic sunroof defect was material to Plaintiff and class members. Had Mercedes disclosed the panoramic sunroof defect at the point of sale, Plaintiff and class members would not have purchased the Class Vehicles or would have paid substantially less them. In addition, they would not have suffered the economic damages sustained. Given Mercedes' conduct, Plaintiff and class members did not receive the benefit of their bargains.

179.    Mercedes' violations present a continuing risk to Plaintiff as well as the general public. Mercedes' unlawful acts and practices complained of herein affect the public interest.

180.    As a direct and proximate result of Mercedes' violations of GBL § 349, Plaintiff and class members have suffered ascertainable loss, injury-in-fact, and/or actual damage. Plaintiff and class members who purchased or leased the Class Vehicles would not have purchased or leased them at all and/or if the true nature of the defective panoramic sunroofs had been disclosed, they would have paid significantly less for them. Plaintiff and class members also suffered diminished value of their Class Vehicles, as well as lost or diminished use.

181.   Mercedes is liable to Plaintiff and the New York class members for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining Mercedes' unfair and deceptive practices, and any other just and proper relief under the NJCFA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court enter a judgment awarding the following relief:

A.   An order certifying the proposed New York and New Jersey state classes and appointing Plaintiff's counsel to represent the classes;

B.   An order awarding Plaintiff and class members their actual damages, punitive damages, and/or any other form of monetary relief provided by law;

C.   An order awarding Plaintiff and class members restitution, disgorgement, or other equitable relief as the Court deems proper;

D.   An order requiring Mercedes to adequately disclose and repair the defective panoramic sunroofs;

E.   An order awarding Plaintiff and class members pre-judgment and post-judgment interest as allowed under the law;

F.   An order awarding Plaintiff and class members reasonable attorneys' fees and costs of suit, including expert witness fees; and

G.   An order awarding such other or further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury as to all issues so triable under the law.

DATED: July 5, 2019                    Respectfully submitted,

                                       */s/ Mitchell M. Breit*
                                       Mitchell M. Breit
                                       Eric S. Johnson (*pro hac vice* forthcoming)
                                       **SIMMONS HANLY CONROY**
                                       112 Madison Avenue, 7th Floor
                                       New York, New York 10016-7416

Telephone: (212) 784-6400
Facsimile: (212) 213-5949
mbreit@simmonsfirm.com
ejohnson@simmonsfirm.com

Gregory F. Coleman (*pro hac vice* forthcoming)
Mark E. Silvey (*pro hac vice* forthcoming)
Adam A. Edwards (*pro hac vice* forthcoming)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com
mark@gregcolemanlaw.com
adam@gregcolemanlaw.com

*Attorneys for Plaintiff*